## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MARY A. RAY, | ) | CASE NO. 1:19-CV-01880 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Mary A. Ray ("Plaintiff"), challenges the final decision of Defendant Andrew

Saul, Commissioner of Social Security ("Commissioner"), denying her applications for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II

and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court

has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States

Magistrate Judge pursuant to consent of the parties. (R. 18). For the reasons set forth below, the

Commissioner's final decision is AFFIRMED.

### I. Procedural History

On April 28, 2016, Plaintiff filed her applications for DIB and SSI, alleging a disability

onset date of December 9, 2015. (R. 11, Transcript ("Tr.") 256-264). The application was denied

initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 93-189). Plaintiff participated in the hearing on April 25, 2018, was represented by counsel, and testified. (Tr. 32-66). A vocational expert ("VE") also participated and testified. *Id*. On August 20, 2018, the ALJ found Plaintiff not disabled. (Tr. 23). On June 21, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On August 19, 2019, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 12, 16 & 17).

Plaintiff asserts the following assignments of error: (1) the ALJ erred by not following the Requirements of Social Security Ruling ("SSR") 96-89, and (2) the ALJ failed to properly evaluate Plaintiff's credibility. (R. 12).

## II. Evidence

### A. Relevant Medical Evidence[1]

#### 1. Treatment Records

On February 10, 2015, Plaintiff was referred by Rebecca L. Schroeder, M.D., for occupational therapy ("OT"). (Tr. 1131). She carried a diagnosis of bilateral carpal tunnel syndrome, which had "responded somewhat to OT in the past." *Id*. Plaintiff rated her pain as a six on a ten-point scale. (Tr. 1132).

On June 8, 2015, Plaintiff saw Occupational Therapist Kimberly Walsh and the record

---

[1]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised. It focuses on Plaintiff's ability to stand/walk and her ability to use her upper extremities, as these are the primary issues in contention. Further, as Plaintiff has taken issue with only the physical restrictions contained in the RFC and the credibility of Plaintiff's physical limitations, the court omits any discussion of Plaintiff's mental impairments.

2

noted that Plaintiff's thumbs had been bothering her for the last five years, and she received a third set of injections. (Tr. 533-544).

On August 18, 2015, Plaintiff saw Dr. Schroeder and complained of lateral right great toe pain that was worse with walking. (Tr. 553). On review of systems, Plaintiff had no syncope, seizures, weakness, gait problems, burning pain, or tremors. *Id*.

On September 16, 2015, Plaintiff presented with a painful bunion on her right foot. (Tr. 562). An x-ray of her right foot revealed "mild to moderate osteoarthritis of the 1st first metatarsophalangeal joint," "moderate size plantar and small posterior calcaneal anthesophytes projecting at the plantar aponeurosis origin Achille's [sic] tendon insertion," and no recent fractures, dislocations, or destructive bone lesions. (Tr. 575).

On April 8, 2016, Plaintiff underwent a left thumb carpometacarpal (CMC) joint fusion. (Tr. 1062, 1082). A fixation wire was surgically removed on May 16, 2016, and her post-operative diagnosis was left thumb arthritis. *Id*.

On July 6, 2016, Plaintiff was seen for a follow up and reported she was doing well and was very happy with the results. (Tr. 1003) She indicated that she also wanted the right side done and had no new complaints. *Id*. On physical examination, she had good grip strength and minimal discomfort moving her left thumb. *Id*. On the right side, she had a positive grind, was tender to palpation, and had pain with resisted activities. *Id*.

On November 7, 2016, Plaintiff underwent a right thumb CMC joint fusion. (Tr. 380, 1549-1550). A fixation wire was subsequently surgically removed on December 23, 2016. *Id*. Her post-operative diagnosis was right thumb arthritis. (Tr. 380).

On January 12, 2017, Plaintiff told her occupational therapist that she could not wring out a mop, grip a vacuum or broom, or "do hair," and was paying a friend to clean her house. (Tr.

3

1625). She still had edema and pain. (Tr. 1626). Her therapy prognosis was "good." (Tr. 1627).

On March 12, 2017, an x-ray of Plaintiff's right ankle yielded an impression of "[n]o radiographic evidence of an acute osseous abnormality," "[s]table post [open reduction internal fixation] ORIF changes with intact hardware which shows no definite evidence of loosening," and stable chronic findings.[2] (Tr. 1648-1649).

On March 17, 2017, Maureen Gallagher CNP, on examination, noted that Plaintiff was five feet tall and weighed 180 pounds, no edema, and normal gait. (Tr. 1824-18256).

On March 29, 2017, Plaintiff had a follow-up regarding her right thumb with Kathryn Wozniak, PA-C. (Tr. 1829-1830). Plaintiff was doing very well, attended occupational therapy regularly, and denied any pain. *Id*. She complained of an exacerbation of her left carpal tunnel syndrome. *Id*. X-rays of Plaintiff's hand showed no signs of hardware failure or change in alignment of the bones. *Id*. Plaintiff was not given any restrictions and was to return only on an "as-needed basis." *Id*.

On April 17, 2017, Plaintiff was seen by Karen Peereboom, CNP. (Tr. 1844-1848). Her extremities were without peripheral edema x 4, she had 5/5 motor strength in the upper and lower extremities, and she had a normal gait. (Tr. 1848). Plaintiff reported shortness of breath with exertion, chronic pain in her posterior right knee and "all joints," and reported taking Tylenol for her joint pain. (Tr. 1844-1845).

On October 25, 2017, x-rays of Plaintiff's knees revealed no acute fracture, but noted degenerative changes including narrowing of the medial and lateral compartments, bony prominence, and patellar spurring. (Tr. 1929).

---

[2] Plaintiff had surgery in 2013 secondary to a right ankle fracture. (Tr. 856).

On January 16, 2018, Plaintiff was seen by Candace Huston, CNP. (Tr. 2017). It was noted that Plaintiff was a poor historian. *Id*. Plaintiff reported "pain to left wrist that shoots to left elbow" and bilateral pain in the elbows after everyday activities such as chores or housework. *Id*. She reported a history of carpal tunnel in both wrists, indicating surgery on the right wrist which "feels good." *Id*. On physical examination, Plaintiff's left elbow was "minimally edematous and warm to touch"   with no specific point tenderness bilaterally. (Tr. 2020).

On January 18, 2018, nurse Peereboom noted on physical examination that Plaintiff had 5/5 motor strength throughout the upper and lower extremities and a normal gait. (Tr. 2035).

On January 22, 2018, Plaintiff was seen by Cheung Cho Yue, M.D., who noted Plaintiff had "OK" range of motion in the elbows with no swelling and "[t]rivial right lateral epicondyle tenderness," full range of motion in the wrists, 4/4 grip, no swelling or effusion of the knees, full range of motion in the ankles, and slight shoulder asymmetry. (Tr. 2054). Dr. Yue's assessment was that rheumatoid arthritis was unlikely, noting that "[s]ymptoms seem to exceed objective finding of joint pathology although her obesity may obscure some of the findings." (Tr. 2054). The treatment plan included ultrasound of the left elbow, elbow films, an arthritis survey, checking additional laboratory findings, and elbow steroid injections. (Tr. 2054). An x-ray of the elbows revealed osteoarthritis of the elbow bilaterally and hypertrophic change of the lateral trochlea. (Tr. 2060). Dr. Yue's summary stated that the x-rays suggested "possible small elbow effusion," "possible tendon calcification," "possible joint space narrowing," and "[p]ossible degenerative changes in the elbow joint." (Tr. 2062). There was no evidence of synovitis. *Id*.

On January 30, 2018, Plaintiff was seen by Adam Hirschfeld, M.D., and complained of bilateral knee pain that was worse when both sitting and being on her feet all day. (Tr. 2065). She also complained of bilateral elbow pain that was being followed by rheumatology. *Id*. Upon

review of x-rays, Dr. Hirschfeld remarked Plaintiff had bilateral osteoarthritis and varus deformity of the left knee. (Tr. 2066). Plaintiff received corticosteroid (CSI) injections in both knees. (Tr. 2066-2067).

On February 26, 2018, Plaintiff was seen by podiatrist Angela F. Grady, DPM. (Tr. 2094). On examination Plaintiff's muscle strength was 5/5 bilaterally for plantarflexion, dorsiflexion, inversion, and eversion. (Tr. 2097). Plaintiff was unable to dorsiflex her right 2nd toe. *Id*. Her toenails were debrided in length and thickness bilaterally without incident. *Id*.

### 2.   Medical Opinions Concerning Plaintiff's Functional Limitations

The parties do not cite any treating source opinions in the record concerning Plaintiff's functional limitations.

On July 17, 2016, state agency reviewing physician Angela Bucci, D.O., completed a physical RFC assessment opining that Plaintiff was limited to occasionally lifting/carrying 20 pounds and frequently 10 pounds. (Tr. 125-127). Plaintiff could stand/walk and sit about six hours each in an eight-hour workday. *Id*. Plaintiff had limited ability to push/pull in the upper extremities bilaterally due to thumb arthritis. (Tr. 126). Additionally, Dr. Bucci opined that Plaintiff was limited to occasionally crawling and never climbing ladders, ropes, or scaffolds. *Id*. With respect to manipulative restrictions, Dr. Bucci opined that Plaintiff had unlimited ability to reach in any direction and to feel, but limited ability to perform gross and fine manipulation bilaterally. (Tr. 126-127). Finally, Plaintiff had to avoid all exposure to hazards. (Tr. 127-128).

On November 22, 2016, state agency reviewing physician Edmond Gardner, M.D, generally agreed with the opinions of Dr. Bucci. (Tr. 85-88). Dr. Gardner opined that Plaintiff could frequently "push/pull on the left and none on the [right] but is healing well and should be improved on the [right] in 4 mo[nths] to frequent." (Tr. 85). Similarly, Dr. Gardner opined that

6

Plaintiff was limited to frequent gross and fine manipulation with the left hand and occasional on the right. (Tr. 86). However, Dr. Gardner indicated that within four months Plaintiff's ability on the right should improve to frequent handling and fingering. *Id*.

**B. Relevant Hearing Testimony**

At the April 25, 2018 hearing, Plaintiff testified as follows:

- She is 5'0" tall and weighs 187 pounds. Her weight fluctuates. She lives alone and has never driven in her life. The highest grade she completed was the 10th grade. (Tr. 39).

- She last worked in 2015. She has had jobs as a housekeeper and lobby attendant. (Tr. 39-42).

- She cannot work due to rheumatoid arthritis in her knees, carpal tunnel syndrome, and pain in her elbows. (Tr. 44-45). On a typical day, she feels pain in her elbows, hands, and knees. (Tr. 45). She rated her pain as 10/10 when she wakes up and 10/10 when she goes to sleep. *Id*. She also stated her pain is 10/10 with or without medication. (Tr. 46).

- Her physical and mental condition has gotten worse over the last several years. (Tr. 46).

- She can sit for about 20 minutes before needing to stand and get up, and stand for about 15 minutes at a time. (Tr. 47-48). She can walk three to four blocks. (Tr. 48). She could lift comfortably a basket of wet clothes, which she estimated weighs ten pounds. (Tr. 48).

- She can wash dishes and make the bed, but other chores like cooking, vacuuming, laundry "just don't get done." (Tr. 47, 50).

- She stopped drinking alcohol nearly two years earlier. (Tr. 53).

- She experiences numbness in two of her fingers. Her right hand is better than the left, as she had carpal tunnel surgery on it. She has not had surgery on the left because her treating providers "say my numbers [are] good." She needs two hands to hold a bottle or coffee cup. (Tr. 54). She can write for 20 minutes before her fingers start to hurt. She has problems reaching overhead with her left arm due to problems with her elbow. Cortisone shots have not helped her elbow pain. (Tr. 55).

The VE testified that Plaintiff's past work was as a housekeeping cleaner, Dictionary of Occupational Titles (DOT) 323.687-014, light as generally performed and medium as Plaintiff

performed it. (Tr. 59). In addition, Plaintiff also performed the job of a lobby Porter, DOT

323.687-018, generally performed at the heavy exertional level and heavy as she performed it.

*Id*. The ALJ posed the following hypothetical question to the VE:

> In the first, assume a hypothetical individual of the claimant's age and education
> and with the past two positions that you've described. Further assume that the
> hypothetical individual is limited as follows; to light, frequent right and left hand
> controls, frequent right and left handling, frequent right and left fingering, never
> climb ladders, ropes or scaffolds, occasional crawl, never to be exposed to
> unprotected heights, moving mechanical parts or operate a motor vehicle. The
> mental limitations to include limited to performing simple, routine and repetitive
> tasks, but not at a production rate pace, i.e. assembly line work, limited to simple
> work related decisions in using her judgment and dealing with changes in the
> work setting, able to occasionally interact with supervisors, coworkers and the
> public.

(Tr. 60). The VE testified that such an individual would be unable to perform the job of a lobby

porter, but "could perform the job of a housekeeping cleaner per the DOT, not as actually

performed." (Tr. 61).

In a second hypothetical, the ALJ asked the VE to assume the same limitations as described

in the first hypothetical with the following additional limitations: "occasional climbing of ramps

and stairs, balance, stoop, kneel and crouch, frequent exposure to humidity and wetness, dust,

odors, fumes and pulmonary irritants, extreme cold and extreme heat." (Tr. 61). The VE testified

that such an individual would be unable to perform the job of a lobby porter, but could

perform the job of a housekeeping cleaner per the DOT, not as actually performed. *Id*. The VE

also identified the following additional light exertional jobs that such an individual could

perform: price marker, DOT 209.587-034 (67,000 jobs nationally); office helper, DOT 239.567-

010 (25,000 jobs nationally); and, mail clerk, DOT 209.687-026 (10,000 jobs nationally). (Tr.

62).

The ALJ inquired if being off-task twenty-percent of the time would affect the jobs. (Tr.

8

63). The VE testified that all full-time jobs would be eliminated by such a limitation as anything above ten percent is work preclusive. *Id*. The VE further testified in response to the ALJ's question that missing two days of work per month would also eliminate jobs as such an individual would be terminated. (Tr. 63).

In response to a question from Plaintiff's counsel, the VE testified that a restriction limiting an individual to less than four hours on their feet would typically preclude light exertional work. (Tr. 64).

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not

9

performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV. Summary of the ALJ's Decision

The ALJ's decision on August 20, 2018, included the following findings of fact and conclusions of law:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2020.

2.  The claimant has not engaged in substantial gainful activity since December 9, 2015, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: left carpal tunnel syndrome; osteoarthritis of the bilateral elbows; degenerative changes of the knees; essential hypertension; asthma; obesity; gastroesophageal reflux disease ("GERD"); major depressive disorder; social anxiety disorder; history of alcohol abuse; left De Quervain's tenosynovitis; left thumb carpometacarpal joint arthritis; status post left thumb carpometacarpal joint arthrodesis and local bone grafting; status post removal of deep implant, left thumb; right thumb carpometacarpal arthritis; status post right thumb arthrodesis of carpometacarpal joint and local bone grafting; status post removal of deep implant, right thumb; history of remote right carpal tunnel release; stable post ORIF change of the right ankle with intact hardware and no evidence of loosening; and very mild normocytic normochromic anemia (20 CFR 404.1520(c) and 416.920(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b) except the claimant can frequently operate right and left hand controls; can frequently operate right foot controls; can frequently handle bilaterally; can frequently finger bilaterally; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can never be exposed to unprotected heights or moving mechanical parts; can never operate a motor vehicle; can frequently be exposed to humidity and wetness, dust, odors, fumes, and pulmonary irritants; can frequently be exposed to extreme cold and extreme heat; is limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (i.e., assembly-line work); is limited to simple work-related decisions in using her judgment and dealing with changes in the work setting; and is able to occasionally interact with supervisors, co-workers, and the public.

6.     The claimant is capable of performing past relevant work as a cleaner, housekeeping. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.     The claimant has not been under a disability, as defined in the Social Security Act, from December 9, 2015, through the date of this decision (20 CFR 404.1520(1) and 416.920(1) ).

(Tr. 12-22).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look

into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

**1. Alleged Errors Stemming from the RFC Finding**

In the first assignment of error, Plaintiff argues that the ALJ did not follow the requirements of SSR 96-8p when making the RFC determination, and that said RFC finding is not supported by substantial evidence. (R. 12, PageID# 2226-2230).

A claimant's RFC is defined as the most the claimant can do, despite the limitations caused by physical and mental impairments. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 SSR LEXIS 5, *7, 1996 WL 374184, at *2. In determining a claimant's RFC, the ALJ considers the limiting effects of all of the claimant's impairments, even those that are not severe. 20 C.F.R. § 404.1545(e); SSR 96-8p, 1996 SSR LEXIS 5, *14, 1996 WL 374184, at *5. The ALJ must "articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any

inconsistencies in the record." *Delgado v. Comm'r Soc. Sec. Admin.*, 30 Fed. App'x 542, 2002 WL 343402, at *4 (6th Cir. 2002) (quoting *Bencivengo v. Comm'r Soc. Sec. Admin.*, 251 F.3d 153 (table), [published in full-text format at 2000 U.S. App. LEXIS 38785] (3d Cir. Dec. 19, 2000)).

Further, the ALJ must provide the finding at each step in a manner that permits meaningful review of the decision. *Snyder v. Comm'r Soc. Sec. Admin.*, No. 5:13CV2360, 2014 U.S. Dist. LEXIS 165623, 2014 WL 6687227, at *10 (N.D. Ohio Nov. 26, 2014). In other words, the ALJ's decision "must build an accurate and logical bridge between the evidence and his conclusion." *Snyder*, 2014 U.S. Dist. LEXIS 165623, 2014 WL 6687227, at *10 (quoting *Woodall v. Colvin*, No. 5:12CV1818, 2013 U.S. Dist. LEXIS 123742, 2013 WL 4710516, at *10 (N.D. Ohio Aug. 29, 2013).) The ALJ's decision in this case sufficiently complied with those standards.

Plaintiff's argument—that the ALJ did not comply with the requirements of SSR 96-8p—is not altogether clear. Plaintiff cites SSR 96-8p for the proposition that "[t]he RFC assessment must be based on *all* of the relevant evidence in the case record." (R. 12, PageID# 2227). Plaintiff proceeds to conclude that the RFC is not supported by substantial evidence because it allegedly fails to account for all of her physical limitations. *Id.* She asserts that she is unable to perform the standing/walking requirements of light work, and is also unable to perform the manipulative levels contained in the RFC.[3]  In support of her argument, Plaintiff cites portions of

---

[3]  Social Security Ruling (SSR) 83-10, 1983 SSR LEXIS 30 states that a "full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR. 83-10, 1983 SSR LEXIS 30 at *14, 1983 WL 31251 at *6 (1983). The ruling "does not explicitly preclude light work for an individual who cannot stand or walk for 6 hours of an 8-hour workday." *Sulecki v. Comm'r of Soc. Sec.*, No. 1:13-CV-1597, 2014 U.S. Dist. LEXIS 73748, 2014 WL 2434631 at *14 (N.D. Ohio May 29, 2014) (Armstrong, M.J.) It explains that "since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off or on, for a total of

the record that set forth her diagnoses, as well as supporting test results such as x-rays, and treatment notes that repeat Plaintiff's subjective complaints made to medical personnel. (R. 12, PageID# 2228-2229).

First, the ALJ's decision concludes Plaintiff has the RFC for light work—a conclusion supported by the opinions from the State Agency physicians, Drs. Bucci and Gardner, who both opined Plaintiff can perform the lifting, standing/walking, and sitting demands of light work, and to whose opinions the ALJ ascribed partial weight. (Tr. 18-19). State Agency consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r SSA*, 380 Fed. Appx. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the State Agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that State Agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 U.S. Dist. LEXIS 182688, 2012 U.S. Dist. LEXIS 182688, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the State Agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 U.S. Dist. LEXIS 42753, 2009 U.S. Dist. LEXIS 42753, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 U.S. Dist. LEXIS 100778,

---

approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." SSR 83-10, 1983 SSR LEXIS 30 at *14, 1983 WL 31251 at *6. In the same vein, frequent handling also means "occurring from one-third to two-thirds of the time." SSR 83-10.

2011 U.S. Dist. LEXIS 100778, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (State Agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work.")

Although Plaintiff contends that a more restrictive RFC should have been assessed based on the medical record, that belief, even if based on a reasonable interpretation of the evidence of record, does not establish a violation of the substantial evidence standard. Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (citation omitted). This means that administrative findings:

> are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Secretary may proceed without interference from the courts. If the [administrative] decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted); *accord Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604-05 (6th Cir. 2009). Under this governing standard, it is immaterial whether there is evidence of record that could have supported a more restrictive RFC decision, so long as there is also evidence supporting the ALJ's less restrictive determination. As noted, the medical opinions of the State Agency physicians constitute such evidence.

Plaintiff suggests that a number of her diagnoses, such the degenerative changes in her knees as noted in x-rays from October 2017 or the surgeries on her hands in which she had arthritis, undermine the RFC determination. She contends that these impairments impose greater limitations than those assessed by the ALJ. However, as discussed below, Plaintiff provides no medical opinion evidence to support such a conclusion. The ALJ recognized that Plaintiff has a number of documented impairments affecting both the upper and lower extremities and included

these impairments among Plaintiff's severe impairments. (Tr. 12). Although an impairment is severe, it is not necessarily debilitating. A diagnosis alone is of little consequence, as it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment. *See Young v. Sec'y of Health & Human Servs.,* 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment); *Vance v. Comm'r of Soc. Sec.*, 260 Fed. Appx. 801, 806 (6th Cir. 2008) ("a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits").

In addition to the diagnoses, Plaintiff's brief references x-rays of her feet and knees that document degenerative changes. (R. 12, PageID# 2229). Plaintiff's brief, however, does not point to any medical opinions interpreting those objective findings as corresponding to functional limitations greater in severity than those contained in the RFC. Neither Plaintiff nor this court possesses the requisite medical expertise to interpret these findings and offer any lay conclusion as to whether an individual with such test results could perform the standing/walking requirements of light work or the manipulative capabilities set forth in the RFC. Such an argument fails to demonstrate the need for a remand.

Finally, Plaintiff's brief identifies medical records that purport to corroborate Plaintiff's difficulties with ambulation and with the use of her hands. (R. 12, PageID# 2229-2230, *citing* Tr. 553, 1625, 2017, 2065). However, these medical records consist of little more than the medical source's recording of Plaintiff's complaints and subjective presentation, and do *not* constitute medical opinions.[4] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms,

---

[4] As discussed in the second assignment of error, the ALJ did not fully credit Plaintiff's testimony.

16

diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 CFR § 404.1527(a)(1)(emphasis added). Thus, Plaintiff's statements made to medical sources or to an occupational therapist are not *per se* credible, nor are they transformed into "medical opinions" simply because the patient's statements have been recorded in treatment notes. *See, e.g., Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 804 (6th Cir. 2011) (the physician's statement "is not a 'medical opinion' at all—it merely regurgitates [the patient's] self-described symptoms"); *accord Paddock v. Comm'r of Soc. Sec.*, No. 1:11-cv-7, 2012 U.S. Dist. LEXIS 135860, 2012 WL 4356711 (W.D. Mich. Sept. 24, 2012); *see also Boughner v. Comm'r of Soc. Sec.*, No. 4:16-CV-1858, 2017 U.S. Dist. LEXIS 89060, 2017 WL 2539839, at *8 (N.D. Ohio May 22, 2017), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 89061, 2017 WL 2501073 (N.D. Ohio June 9, 2017) (finding that medical records containing observations recorded by a claimant's physician were likely statements made by plaintiff about his condition and not medical opinions as defined by the regulations); *Coleman v. Comm'r of Soc. Sec. Admin.*, No. 1:16-CV-0179, 2016 U.S. Dist. LEXIS 184079, 2016 WL 8257677, at *14 (N.D. Ohio Nov. 29, 2016), report and recommendation adopted, 2017 U.S. Dist. LEXIS 21835, 2017 WL 633423 (N.D. Ohio Feb. 15, 2017) (finding that "office notes reflect plaintiff's own subjective statements regarding her condition" and, therefore, do not constitute "objective medical evidence"); *Rogers v. Astrue*, No. 11-cv-82, 2012 U.S. Dist. LEXIS 24712, 2012 WL 639473, at *4 (E.D. Ky. Feb. 27, 2012) ("Simply recording Plaintiff's subjective complaints is not objective medical data therefore Dr. Lyons' clinical findings were insufficient to support a deferential review by the ALJ.")

 As stated above, the diagnoses cited by Plaintiff do not axiomatically establish a level of limitation greater than the restrictions contained in the RFC. Plaintiff has not pointed to any

"medical opinions" that confirm she is unable to perform the requirements of light exertional work, as she alleges, or that she cannot perform frequent gross or fine manipulation as set forth in the RFC. Plaintiff points to no evidence, beyond Plaintiff's subjective self reports, that support an alleged inability to frequently perform gross or fine manipulation or stand/walk for up to six hours a workday as required by light exertional work.

Finally, Plaintiff contends the ALJ's RFC determination "fails to consider the time spent off-task and absenteeism as a result of [Plaintiff's] physical and mental limitations." (R. 12, PageID# 2230). The Commissioner asserts that Plaintiff's argument—that she would be off-task in excess of ten-percent of the workday and absent in excess of once a month—is undeveloped and wholly unsupported by argument. (R. 16, PageID# 2251). In her reply, Plaintiff disagrees with this characterization and suggests that her argument was well supported in the initial brief. (R. 17, PageID# 2262-2263). The court does not agree. Indeed, Plaintiff's argument on this issue consists of a conclusory sentence stating that: "[d]ue to [Plaintiff's] extensive limitations she would be off-task well in excess of ten percent of given workday or absent in excess of one day per month, either of which would be work preclusive according to VE testimony. Tr. 63-63." (R. 12, PageID# 2230). Plaintiff's argument cites only to the VE's testimony in response to Plaintiff's counsel's hypothetical questioning during the administrative hearing; and it presents no foundation for the assertion that Plaintiff would be off-task in excess of ten-percent of the workday or absent at least twice a month due to her impairments.

The court cannot take such a conclusory and undeveloped assertion and transform it into a substantive argument on Plaintiff's behalf without improperly becoming an advocate for Plaintiff. Further, it is well established that "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *See*

*e.g., Kennedy v. Commissioner*, No. 03-1276, 2003 WL 23140056, at *1 (6th Cir. Dec. 12, 2003) (*citing United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument); *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997), *cert. denied*, 523 U.S. 1050 (1998) (same); *McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011) (court under no obligation to scour record for errors not identified by claimant). The *McPherson* court aptly stated: "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson*, 125 F.3d at 995-996 (internal citations omitted); *accord Paul v. Detroit Edison Co.*, 642 Fed. App'x 588, 592 (6th Cir. 2016); *Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, No. 3:15-cv-666, 2017 U.S. Dist. LEXIS 188005, *8 (N.D. Ohio, Nov. 14, 2017) (declining to "add flesh to the bones of a party's skeletal … argument") (Carr. J.). The court deems this argument undeveloped and waived.

### 2. Credibility Assessment

In the second assignment of error, Plaintiff argues the ALJ failed to properly evaluate the credibility of her complaints of pain, weakness, physical limitations, and limitations of daily functions. (R. 12, PageID# 2231). Plaintiff avers that the ALJ did not follow the directive of SSR 16-3p, arguing that her "credibility however is highly reliable when compared to the longitudinal record," and cites her own hearing testimony in support. (R. 12, PageID# 2232). Further, Plaintiff complains that the ALJ allegedly "cherry-picked" only the evidence supporting his determination, and again cites Plaintiff's own testimony as the ignored evidence. *Id*. Though not explicitly stating which portions of her testimony were ostensibly improperly rejected, Plaintiff's argument primarily addresses her difficulties with using her hands. (R. 12, PageID# 2232-2234; R. 17, PageID# 2264). Thus, the court focuses its credibility analysis on these hand-based limitations.

19

An ALJ is not required to accept a claimant's subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *accord Sorrell v. Comm'r of Soc. Sec.*, 656 Fed. App'x 162, 173 (6th Cir. 2016). "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987) ("[T]olerance of pain is a highly individual matter and a determination of disability based on pain by necessity depends largely on the credibility of the claimant," and an ALJ's credibility finding "should not lightly be discarded.") (citations omitted). Nevertheless, while an ALJ's credibility determinations concerning a claimant's subjective complaints are left to his or her sound discretion, those determinations must be reasonable and supported by evidence in the case record. *See, e.g., Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 310, 312 (6th Cir. 1983) ("the ALJ must cite *some* other evidence for denying a claim for pain in addition to personal observation").

The pertinent Social Security Ruling provides "[i]n evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017). Rather, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10. A reviewing court should not disturb an ALJ's credibility determination "absent [a] compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and "in practice ALJ credibility

findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 Fed. App'x 468, 476 (6th Cir. 2016) (*citing Payne v. Comm'r of Soc. Sec.*, 402 Fed. App'x 109, 113 (6th Cir. 2010)).

According to SSR 16-3p (as well as SSR 96-7p which it superseded), evaluating an individual's alleged symptoms entails a two-step process that involves first deciding whether a claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain."[5] 2017 WL 5180304 at *2-3. The ALJ's decision found the first step was satisfied and states that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms…." (Tr. 16).

After step one is satisfied, an ALJ—when considering the intensity, persistence, and limiting effects of an individual's symptoms—should consider the following seven factors: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or

---

[5] "The Sixth Circuit characterized SSR 16-3p … as merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377856, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two social security rulings, and the changes largely reflect a preference for a different terminology. *See, e.g., Howard v. Berryhill*, No. 3:16-CV-318-BN, 2017 WL 551666, at *7 (N.D. Tex. Feb. 10, 2017) ("having reviewed the old and new rulings, it is evident that the change brought about by SSR 16-3p was mostly semantic."). While the court applies the current SSR, it declines to engage in verbal gymnastics to avoid the term credibility where usage of that term is most logical.

other symptoms; (6) any measures other than treatment an individual uses or has used to relieve

pain or other symptoms; and, (7) any other factors concerning an individual's functional

limitations and restrictions due to pain or other symptoms. SSR 16-3p at *4-8 (same factors as in

SSR 96-7p). The ALJ concluded that Plaintiff's statements concerning the intensity, persistence,

and limiting effects of her symptoms were "not entirely consistent with the medical evidence and

other evidence in the record for the reasons explained in [the] decision." (Tr. 16).

The ALJ discussed Plaintiff's ability to use her upper extremities throughout the decision as

follows:

> The record indicates that the claimant had left thumb carpometacarpaljoint
> arthrodesis and local bone grafting performed on April 8, 2016 (Exhibit B14F,
> page 7). The postoperative diagnosis was left thumb carpometacarpaljoint arthritis
> (Exhibit B14F, page 7). The record also indicates that the claimant had removal of
> deep implant, left thumb, performed on May 16, 2016 (Exhibit B13F, page 7).
> The postoperative diagnosis was left thumb carpometacarpal arthritis (Exhibit
> B13F, page 7).
>
> Additionally, the claimant had right thumb arthrodesis of carpometacarpal joint
> and local bone grafting performed on November 7, 2016 (Exhibit B1F, page 7).
> The postoperative diagnosis was right thumb carpometacarpal arthritis (Exhibit
> B1F, page 7). Also, the claimant had removal of deep implant, right thumb,
> performed on December 19, 2016, and the postoperative diagnosis was right
> thumb carpometacarpal arthritis (Exhibit B21F, pages 108-109).
>
> ***
>
> In addition, the record indicates that the claimant had right carpal tunnel surgery
> in 2004, and a March 2, 2015 record contained a diagnosis of bilateral carpal
> tunnel syndrome (Exhibit B14F, page 52; Exhibit B21F, page 28). However, a
> March 29, 2017 record indicated that the claimant had not had a recent EMG to
> evaluate the severity of her carpal tunnel syndrome (Exhibit B26F, pages 144-
> 145). A January 16, 2018 record did note that the claimant's right wrist felt good,
> though (Exhibit B28F, page 2). Further, a June 5, 2017 record contained a
> diagnosis of left De Quervain's tenosynovitis (Exhibit B26F, page 189).
>
> ***
>
> Also, January 22, 2018 x-rays of the claimant's elbows revealed osteoarthritis of

22

the elbow, greatest at the ulnotrochlear articulation, as well as hypertrophic change of the lateral trochlea (Exhibit B28F, page 45).

*** 

Other physical exam findings and records also do not suggest that the claimant is as limited as alleged. For example, a January 19, 2016 exam indicated that the claimant was a pleasant healthy individual not in acute distress (Exhibit B5F, page 20). Further, a July 6, 2016 exam indicated that the claimant had good grip strength and had minimal discomfort moving her thumb on the left side (Exhibit B10F, page 16). *** [A]nd an April 17, 2017 exam indicated that the claimant had normal gait and had 5/5 motor strength throughout the upper and lower extremities bilaterally (Exhibit B26F, pages 140, 163). In addition, a January 16, 2018 exam indicated that the claimant had 5/5 hand grasp strength, and a January 22, 2018 exam indicated that the claimant had full range of motion in the wrist and OK range of motion in the elbows, had full range of motion in the ankles, had no effusion or swelling in the knees (Exhibit B28F, pages 5, 38-39). Further, a January 18, 2018 exam indicated that the claimant *** had 5/5 motor strength throughout the upper and lower extremities bilaterally (Exhibit B28F, page 20). Moreover, a March 29, 2017 exam noted that the claimant appeared very comfortable, and the record did not provide for any restrictions on the claimant (Exhibit B26F, page 144).

*** 

The claimant's reported activities also do not suggest that the claimant is as limited as alleged. For example, a September 23, 2016 record indicated that the claimant does crocheting and knitting, and a March 9, 2017 record indicated that the claimant was able to wring out a mop and vacuum (Exhibit B18F, page 16; Exhibit B26F, page 133). In addition, a March 13, 2018 record indicated that the claimant was independent with self-care and was independent with all activities of daily living (Exhibit B28F, page 100). Further, a November 17, 2016 record indicated that the claimant feels better when she sees her grandchildren, and a February 15, 2016 record listed playing board games with a grandchild and watching television as meaningful activities (Exhibit B18F, page 3; Exhibit B20F, page 35). The claimant also testified that she goes to the grocery store and can prepare sandwiches, such as a peanut butter sandwich.

(Tr. 16-18).

Here, the ALJ reasonably considered several of the SSR 16-3p factors. The ALJ discussed

some of Plaintiff's daily activities such as crocheting and knitting with appropriate citations to

the record (Tr. 1301, 1818).[6]  These same records also indicate Plaintiff was "now able to wring out mop, vacuum." (Tr. 1818, 1836). The ALJ also discussed Plaintiff's treatment, namely her several surgeries on her hands, and her abilities after these surgeries. These included not only the aforementioned activities, but also Plaintiff's 5/5 hand grasp strength, and 5/5 motor strength in her upper extremities, and range of motion in her upper extremities. (Tr. 18).

The ALJ engaged in a sufficient analysis, and is not required to analyze all seven factors, but only those factors germane to the alleged symptoms. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005) (Baughman, M.J.) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence"); *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005) (finding that neither SSR 96-7p nor the regulations "require the ALJ to analyze and elaborate on each of the seven factors when making a credibility determination"); *Wolfe v. Colvin*, No. 4:15-CV-01819, 2016 WL 2736179, at *10 (N.D. Ohio May 11, 2016) (Vecchiarelli, M.J.); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *9 (N.D. Ohio Apr. 4, 2012) (White, M.J.). SSR 16-3p itself states that where "there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor," but rather will only "discuss the factors pertinent to the evidence of record." *Id.* at *8.

---

[6] Notably, some of Plaintiff's challenges on this front are simply inaccurate. She asserts she merely aspired to be able to knit and crochet again. (R. 12, PageID# 2230). However, treatment notes from April 6, 2017, plainly state that Plaintiff had returned to crocheting but self limits her time to avoid pain, numbness, and tingling. (Tr. 1818, 1836). Plaintiff also focuses on her statement that she needed to pay a friend to clean her house (R. 12, PageID# 2230), but ignores evidence, cited by the ALJ, that Plaintiff "no longer [had] to pay friend to clean house." (Tr. 1818, 1836).

Given the high level of deference owed to an ALJ's findings with respect to the evaluation of a claimant's alleged symptoms and resulting limitations, under the circumstances presented herein, the court cannot find the ALJ's credibility analysis was deficient.

Finally, Plaintiff's general complaint—that the ALJ allegedly cherry picked evidence—is unavailing. (R. 12, PageID# 2232). This argument is rarely successful. The Sixth Circuit has found that a claimant's allegation of cherry-picking evidence by an ALJ unavailing on appeal, agreeing with the court below that such an "allegation is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. Apr. 3, 2014) (*citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.")); *accord Hammett v. Comm'r of Soc. Sec.*, No. 16-12304, 2017 WL 4003438, at *3 (E.D. Mich. Sept. 12, 2017); *Cromer v. Berryhill*, No. CV 16-180-DLB, 2017 WL 1706418, at *8 (E.D. Ky. May 2, 2017); *Anderson v. Berryhill*, No. 1:16CV01086, 2017 WL 1326437, at *13 (N.D. Ohio Mar. 2, 2017), *report and recommendation adopted*, 2017 WL 1304485 (N.D. Ohio Apr. 3, 2017).

Therefore, Plaintiff's second assignment of error is without merit.

## VI. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: September 1, 2020